IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JERMAINE LAWSON                                                                             PLAINTIFF

v.                              Civil No. 6:22-CV-06111-SOH-MEF

LT TOBEY GARDNER, Gurdon Police Department                              DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Jermaine Lawson, a prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Plaintiff was convicted of state criminal charges and, at the time his Complaint was filed, he was serving his prison sentence at the Clark County Detention Center ("CCDC") in Arkadelphia, Arkansas. (ECF No. 1, pp. 1-2). In a separate order, this Court granted Plaintiff's *in forma pauperis* ("IFP") application. (ECF No. 3). This matter is now before the Court for preservice review under the provisions of the Prison Litigation Reform Act ("PLRA"). Pursuant to 28 U.S.C. § 1915A, the Court must screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). For the reasons discussed below, it is recommended that the personal capacity claim against Lieutenant Gardner for alleging pointing a gun at Plaintiff during a traffic stop proceed and that all other claims be dismissed. 28 U.S.C. § 1915A(b)(1).

### I.      BACKGROUND

According to Plaintiff, on January 12, 2021, he was driving southbound on Highway 67

1

from Gurdon, Arkansas towards Little Mo's Liquor Store when he observed Lieutenant Gardner traveling northbound on Highway 67 behind a log truck. (ECF No. 1, pp. 4-6). Plaintiff contends that he was approximately 1.5 miles past the school zone when Lieutenant Gardner stopped his pursuit of the log truck and maneuvered to get behind him. *Id.* Plaintiff alleges that he noticed that Lieutenant Gardner had his lights on, signaling Plaintiff to stop, approximately one mile after he initially passed him. *Id.* Plaintiff admits he drove another half mile and then pulled over at Little Mo's Liquor Store. *Id.* Plaintiff claims that he was accused of speeding, but that there is no radar or dash cam video to substantiate this accusation.

Plaintiff alleges that when Lieutenant Gardner exited his vehicle, he had his weapon pointed at him. (ECF No. 1, p. 6). Plaintiff contends that Lieutenant Gardner then ordered him out of his car, handcuffed him, and searched him without consent. *Id.* Plaintiff claims that Lieutenant Gardner ultimately handed him over to Roy Bethel, an agent on the narcotics task force, who took him into custody. *Id.* at p. 8. Plaintiff alleges that no one advised him of his rights for 2-3 days after he was taken into custody. *Id.* According to Plaintiff, Roy Bethel had no knowledge of the traffic stop and his passenger, Lamont Glascow, was not mentioned in the police report. *Id.* Plaintiff contends that he was afraid for his life during this encounter. *Id.*

Plaintiff claims that the traffic stop, search, and seizure violated his constitutional rights. (ECF No. 1, pp. 4, 6, 7). Plaintiff identifies Lieutenant Gardner as a defendant in both his official and individual capacities. *Id.* at pp. 5, 7, 8. Plaintiff claims that Lieutenant Gardner knows him personally and that his behavior during this encounter was motivated by personal animus. *Id.* at pp. 5, 7. Plaintiff requests compensatory and punitive damages for his lost income due to his incarceration and the emotional distress he suffered from having a gun pointed at him and being

separated from his family. *Id*. at p. 9. He requests release from incarceration and that this matter be investigated and that the results of this investigation be shared with his appellate lawyer, among others. *Id*. He also seeks "a clean record of my past 20 years." *Id*.

A review of the publicly accessible state court records system shows that because of the January 12, 2021, traffic stop, Plaintiff was charged by criminal information with multiple felony charges, including unlawful drug and firearm possession. *See State v. Jermaine Lawson*, Case No. 10CR-21-15 (9th East Cir. Div. 1 Jan. 27, 2021).[1] *See also Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (court may take judicial notice of judicial opinions and public records). A jury found Plaintiff guilty of all charges and he was initially sentenced to a term of imprisonment of 792 months and then resentenced to a term of imprisonment of 780 months. *See* Sentencing Order, *State v. Lawson*, Case No. 10CR-21-15 (Aug. 26, 2022); *see also* Amended Sentencing Order, *Lawson*, Case No. 10CR-21-15 (Nov. 9, 2022). Plaintiff has appealed to the Arkansas Court of Appeals from the judgment against him. *See* Notice of Appeal, *Lawson*, Case No. 10CR-21-15 (Sept. 23, 2022). It appears that this appeal remains pending. *Id.*

## II. LEGAL STANDARD

Under the PLRA, the Court is obliged to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In reviewing whether a complaint (or portion thereof) states a claim for which relief may be granted, this Court must accept the complaint's factual allegations as true and draw all

---

[1] AOC Public CourtConnect Production, https://caseinfo.arcourts.gov/ (last visited Nov. 29, 2022).

reasonable inferences in the Plaintiff's favor. *Varga v. U.S. Nat'l Bank Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014). The factual allegations need not be detailed, but they must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. *Pro se* complaints are to be construed liberally, but they must still allege enough facts to support the claims advanced. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases).

Plaintiff's requests for relief are addressed, in turn, below.

### III.   LEGAL ANALYSIS

**A.  Plaintiff's Claim for Damages Due to His Incarceration is *Heck*-barred**

Plaintiff's claim for compensatory damages for lost income due to his incarceration is governed by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that:

> [i]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted). The Supreme Court, however, carved out a narrow exception to *Heck* for claims alleging a violation of the Fourth Amendment prohibition against unreasonable searches and seizures. Specifically, the Court explained that:

> A suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful would not *necessarily* imply that the plaintiff's conviction was unlawful.

512 U.S. at 487 n.7. Plaintiff's claim alleging that Lieutenant Gardner unlawfully stopped and searched his person falls into this small category of cases: if Plaintiff successfully demonstrated that the search was unlawful, this result would not necessarily imply the invalidity of his convictions because the state could argue, for example, that the evidence would have been discovered through some other lawful means. *See Moore v. Sims*, 200 F.3d 1170, 1172 (8th Cir. 2000) (concluding that plaintiff's unlawful-seizure claim was not barred by the *Heck* favorable termination rule).

Having concluded that Plaintiff's "unlawful-search-and-seizure" claim is not barred by the *Heck* favorable termination rule, however, does not end the analysis because *Heck* nevertheless precludes a claim for compensatory damages in this small category of cases unless the plaintiff proves "not only that the search was unlawful, but that it caused him actual, compensable injury, which [ . . . ] does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." *Id.* Accordingly, pursuant to *Heck*, Plaintiff cannot request compensatory damages for lost income due to his incarceration until or unless his conviction has been overturned. Because Plaintiff's conviction has not been overturned, his claim for compensatory damages for lost income stemming from his incarceration fails as a matter of law.

    **B. Plaintiff's Request for Immediate Release Fails under *Preiser***

In addition to compensatory damages for lost income due to his incarceration, Plaintiff also requests immediate release from custody. (ECF No. 1 at 9-10). This claim is barred pursuant to *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973).

In *Preiser*, the Supreme Court held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." 411 U.S. 475, 489 (1973). Rather,

"a state prisoner challenging the fact or duration of his physical imprisonment and seeking a determination that he is entitled to immediate or speedier release has a federal remedy only through a writ of habeas corpus . . . ." *See Otey v. Hopkins*, 5 F.3d 1125, 1131 (8th Cir. 1993) (citing *Preiser*, 411 U.S. at 500).

Here, Plaintiff reports that he "feels[s] that [he] should not be incarcerated" and requests his "freedom." (ECF No. 1 at 9-10). Plaintiff also requests "a clean record of [his] past 20 years." *Id.* at 10. These claims for relief specifically target the fact of his conviction, and, pursuant to *Preiser*, a § 1983 claim is not the appropriate vehicle to pursue such relief.[2] Accordingly, Plaintiff's claims for immediate release and a "clean record" fail.

**C. Plaintiff's Claim for Damages for Emotional Distress**

Plaintiff's remaining claim for money damages is for the emotional distress he purportedly suffered from Lieutenant Gardner pointing his gun at him. (ECF No. 1 at 9). Recognizing that pro se complaints are to be liberally construed, *Stone v. Henry*, 364 F.3d 912, 915 (8th Cir. 2004), this Court views this claim as alleging that Lieutenant Gardner used excessive force during the January 12, 2021, traffic stop.

In determining whether a police officer's conduct amounts to constitutionally impermissible "excessive force," courts consider "whether the amount of force used was objectively reasonable under the particular circumstances." *Shekleton v. Eichenberger*, 677 F.3d 361, 366 (8th Cir. 2012). Courts, moreover, "evaluate the reasonableness of an officer's use of force from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Masters v. City of Independence, Missouri*, 998 F.3d 827, 835 (8th Cir. 2021)

---

[2] Plaintiff is cautioned, moreover, that before he pursues federal habeas relief, he must first exhaust his state court remedies. 28 U.S.C. § 2254(b)(1).

6

(quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009) (internal quotations omitted)).

Plaintiff alleges that after Lieutenant Gardner pulled him over for speeding, he drew his gun and pointed it at him. (ECF No. 1 at pp. 6, 8, 9). Plaintiff claims that Lieutenant Gardner knows him from previous encounters and that his conduct during the traffic stop was motivated by personal bias against him. *Id.* at pp. 5, 7, 8. Plaintiff further claims that he was afraid for his life "due to all these acts going on in the world to date [and] with these false accusations [he] feel[s] that he could have pulled the trigger and got away with murder ...." *Id.* at 8. Bearing in mind that for the purposes of preservice screening the Court must assume as true the allegations in the Complaint, the Court finds Plaintiff has established a plausible excessive force claim.[3]

### D. Claims Against Lieutenant Gardner in his Official Capacity Fail

Plaintiff identifies Lieutenant Gardner as a defendant in his personal and official capacities. An official capacity claim against a defendant is the equivalent to a claim against the municipal entity who employs him, here, Clark County, Arkansas. *See Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998). To sustain such a claim, a plaintiff must establish that the alleged constitutional violation resulted from "(1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 699 (8th Cir. 2016).

Here, Plaintiff fails to establish a plausible claim against Lieutenant Gardner in his "official

---

[3] Plaintiff also asks that the January 12, 2021, traffic stop be investigated. (ECF No. 1 at 9). To the extent that Plaintiff is requesting that the court conduct its own investigation into the constitutionality of Plaintiff's search and seizure on January 12, 2021, Plaintiff misapprehends the role of the federal courts. Article III of the United States Constitution only allows federal courts to consider actual, ongoing cases or controversies. *Preiser*, 422 U.S. at 401. ("The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy."). This court has no authority to exceed its limited powers by, for example, conducting its own investigations.

capacity." Plaintiff does not claim that Clark County, Arkansas harmed him due to an unconstitutional policy or custom. Further, he does he allege any facts suggesting that such an unconstitutional policy or custom exists. *Doe ex rel. Doe v. School Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003) (concluding that the deficiency with plaintiff's complaint is in the "complete absence of allegations, reference, or language by which one could begin to draft an inference that the conduct complained of" resulted from an unconstitutional policy or custom). By contrast, Plaintiff specifically alleges that Lieutenant Gardner's conduct during their encounter was motivated by *personal* bias. Finally, Plaintiff fails to establish that his harm was the result of a deliberately indifferent failure to train or supervise. To show deliberate indifference, a plaintiff must show that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996). Plaintiff makes no such showing here. Accordingly, Plaintiff's official capacity claim fails as a matter of law.

## IV. CONCLUSION

In sum, having reviewed Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, the undersigned recommends that the following claims be dismissed:

1. Plaintiff's claim for money damages for lost income due to his incarceration;

2. Plaintiff's claim to be released from custody and to have a "clean record"; and

3. Plaintiff's claims against Lieutenant Gardner in his official capacity.

By separate order, this Court will direct the U.S. Marshal Service to serve the Complaint on Defendant Lieutenant Gardner in his personal capacity as to the remaining claim: that Lieutenant Gardner used excessive force in pointing the gun at Plaintiff during the traffic stop on

January 12, 2021, causing Plaintiff emotional distress.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of December 2022.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE